UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REISHA SIMPSON,

               Petitioner,

-against-

THE CITY OF NEW YORK, THE
NEW YORK CITY POLICE
DEPARTMENT, POLICE OFFICER
KENSON NELSON, SHIELD
#001838, 40 PCT., AND SGT.
ALLISON DEMICK, SHIELD #
001099, CJB,

               Respondents.

12 Civ. _____(    )

COMPLAINT AND
DEMAND FOR JURY TRIAL

Plaintiff REISHA SIMPSON, by and through her attorney, Steven H. Goldman, Esq., for her Complaint alleges as follows:

PRELIMINARY STATEMENT

Reisha Simpson was on her way home from Brooklyn after delivering a dress to a fellow member of her church. She arrived at the BX19 bus stop in the Bronx, and there waited in line to board the bus, which was taking on passengers when she arrived. After waiting for several minutes the bus driver announced that he was having trouble with the lift. He told everyone who was waiting to enter through the front door to instead enter through the rear door. As soon as he made this announcement, the rear door to the bus

opened. All the passengers who had been waiting in line to enter through the front door moved to the rear door and began to file into the bus.

Like everyone else, Ms. Simpson heeded the driver's request and entered through the rear door. As she stood in a line of people on the bus waiting to pay the fare at the front of the bus – she had two MetroCards in her bag – a police officer poked her in the side with his hat and ordered her off the bus. She complied. Several passengers began to yell to the officer that Ms. Simpson was simply doing what the bus driver told everyone to do, and that he need only look to the frozen lift at the front of the bus to know why.

Despite what the other passengers were shouting and the obvious problem with the lift, Officer Nelson never approached the driver or any of the other passengers to seek clarification of the situation. He simply made an assumption; an assumption he never questioned or sought to confirm; an assumption without any basis in fact; an assumption that resulted in Ms. Simpson spending 21 hours in jail for a crime she did not commit.

THE PARTIES

1.  Plaintiff REISHA SIMPSON is a citizen of the United States and a resident of Bronx County in the State of New York.

2.  Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was

responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

3. At all times relevant hereto, defendants Nelson and Demick were police officers employed by and/or under the supervision of the New York Police Department, acting in their capacity as agents, servants, and employees of the City of New York, and within the scope of their employment as such.

## JURISDICTION AND VENUE

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York state common law.

5. The jurisdiction of the Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) (3) and (4), 1367(a), and the doctrine of pendent jurisdiction for state law claims.

6. The acts complained of occurred in the Southern District of New York, and venue is lodged in the Court pursuant to 28 U.S.C. § 1391(b).

7. This action has been commenced within one year and three months after the happening of the event upon which the claim is based.

## JURY DEMAND

8. Plaintiff demands trial by jury in this action.

FACTUAL ALLEGATIONS

9. On the date of the incident, Plaintiff was a thirty-six-year-old woman living at 652 Southern Blvd, Bronx, New York. She has five children, ages 22, 21, 20, 14 and 11, the three youngest of whom reside with her.

10. Since 1988, Plaintiff has been employed for SOS Security, where she was voted Employee of the Year in 2010.

11. In 2008 Plaintiff received an Associates Degree in Theatre from Borough of Manhattan Community College. She has been pursuing an acting career since 2004, and has appeared in various film and stage productions. She is a member of the Actor's Connection.

12. The charges in the instant case, Docket No. 2011BX034227, were dismissed against Ms. Simpson on June 16, 2011. See Exhibit 1, Certificate of Disposition, Reisha Simpson.

13. On June 16, 2011, Plaintiff was on her way home from Brooklyn. While in Brooklyn she met a woman, Jenny Kinard, with whom she attends church, in order to give Ms. Kinard a dress. On her way home she stopped at the Drama Book Shop on 40th Street in Manhattan to peruse some books on acting. She left the Drama Book Shop at approximately 7pm and took the number two train to 149 Street and Third Avenue in the Bronx.

14. At 149th Street and Third Avenue Plaintiff decided to transfer to the Bx19 bus, which was taking on passengers when she arrived. She waited in line to board the

bus for approximately three to five minutes. The bus driver, who was having difficulty bringing a passenger onto the bus using the lift, announced to the people waiting to board the bus that they should go around to the rear door and enter there. Upon saying this, the rear bus door opened. Everyone who was in line at the front door began to enter the rear door instead. Plaintiff followed the line of people and entered through the rear door with everyone else.

15. Once inside the bus, Plaintiff waited in a line of people going toward the front of the bus to pay their fare. As she waited in line she felt something make contact with the side of her body. She looked down and saw that the object was a police hat. When she turned around Officer Nelson asked her if she had any identification on her. She said yes and moved toward the machine to swipe her MetroCard. Officer Nelson told her not to swipe her card and again asked to see her identification. When Plaintiff went to retrieve her ID and do as she was being asked, Officer Nelson told her to exit the bus. Plaintiff complied with this request and exited the bus.

16. When Officer Nelson told Plaintiff to leave the bus, passengers began to yell things to him about Plaintiff. One passenger yelled that the lift in the front of the bus was stalled, and that's why the passengers were entering through the rear entrance. Another passenger yelled, "We're all doing that," referring to people entering through the back door. A third passenger yelled, "Don't you see what's going on in the front of the bus?" referring to the stalled lift.

17. Despite the passengers' attempts to explain the situation to him, Officer Nelson never responded to any of their comments while he was still on the bus with Plaintiff. Nor did he attempt to speak with any of the passengers in the five minutes

between their departure from the bus and the buses' departure from the bus stop. Finally, he made no effort to speak with the bus driver and get the facts from him. Nothing would have been easier than to walk over to the bus driver and ask him if he had instructed Plaintiff and the other passengers to enter the bus through the rear door. Yet even this minimal and easily accomplished investigation was not done. In short, Officer Nelson made **no effort whatsoever** to confirm the accuracy of his belief that Plaintiff had entered the bus through the rear door in an attempt to evade payment of the bus fare.

18. Once outside the bus, Plaintiff handed Officer Nelson her License. When Officer Nelson noticed a PBA card among her ID, he took it and began to scrutinize both pieces of her ID. He asked her if she was an officer and she replied that she was. He then asked her what precinct she was with, and she replied that she was not with a precinct. (Though he did not ask her, as a security officer, Plaintiff belongs to the same union to which members of the NYPD belong, and this explains why she was carrying a PBA card.) Officer Nelson then put both pieces of Plaintiff's ID in his shirt pocket. Approximately five minutes after she was asked to leave the bus, the bus departed. He handcuffed Plaintiff's arms behind her back and called for an RMP to transport her to the precinct.

19. During the drive to the precinct, Plaintiff tried to adjust her sitting position in order to find a position in which the handcuffs were not pinching her wrists. When Officer Nelson saw Plaintiff squirming in the back seat he yelled, "She's reaching," and told the driver to pull the car over. He then exited the car, ran to the rear door, threw it open, reached in and snatched Plaintiff's bag from the floor where it was sitting. Officer

Nelson moved so quickly and looked so angry that Plaintiff feared he was going to shoot her.

20. When they arrived at the 40 Precinct and removed Plaintiff from the RMP, Officer Nelson accused her of trying to conceal narcotics in the RMP. Accordingly, he searched the back seat where Plaintiff had been sitting. No narcotics or other contraband were recovered from the back seat, from Plaintiff's person, or from anyplace else associated with Plaintiff.

21. Once inside the Precinct, Plaintiff asked – again - if she could call her children and let them know where she was. Officer Nelson denied her request. When another officer, Officer Johnson, asked Officer Nelson why Plaintiff was not being allowed to call her children, Officer Nelson replied, "They're not my kids." A little later, when Officer Johnson actually did let Plaintiff use a phone to call her children, Officer Nelson became irate. "No, no, no, that's **my** collar," he groused to Officer Johnson."

22. Some time later, while she was being held in a cell in the 40 Precinct, Plaintiff became cold. Officer Nelson had earlier taken her shoes, and she was only wearing a sleeveless shirt and sweat pants. She told Officer Nelson that she was cold and asked if he had a blanket that she could use for warmth. In response, he offered her a piece of paper towel. When Plaintiff pointed-out that she could not cover herself with a piece of paper towel, Officer Nelson sarcastically replied, "Oh well, I offered," and threw the paper towel in the trash.

23. When Officer Nelson later found Plaintiff's bible during a search of her property, he suddenly seemed repentant. "I was shocked to see a bible in your bag," he said to her. He then added the following *mea culpa*: "Listen, you won't have to see a

judge but I do have to process you, then you can go home. This was all a mistake, you know." Then, referring to the arrest and attempting to explain why he arrested her, he added, "It was hot."

24. At the time of her arrest, Plaintiff had two current MetroCards on her person: an unlimited-ride card and a pay-per-ride card. She was released at her arraignment after having spent approximately twenty-one hours in custody.

25. Plaintiff had to return to court three times. The case was eventually dismissed on October 3, 2011, at the request of the Bronx District Attorney's office. It was dismissed three-and-a-half months after she was arrested for entering the rear door of a bus as the bus driver had instructed her to do.

26. As a result of her arrest, Plaintiff has become petrified of police officers. Indeed, one day Plaintiff happened to see Officer Nelson arresting another person in the same area where her arrest had taken place. She was so upset by the chance encounter that she began to panic and run away. It took her friend nearly a block to catch-up with her and begin to calm her down. She continues to experience a sensation of panic, including shortness of breath and tightness in the chest, whenever she sees a police officer.

27. Defendant officers lacked any legal justification for Plaintiff's arrest. As a result of the arrest, Plaintiff suffered significant – and entirely unnecessary – psychological and emotional injuries, as well as pain and suffering, fear, emotional distress, mental anguish and humiliation.

28. The arrest of Ms. Simpson lacked probable cause, and was done maliciously, falsely and in bad faith. Defendants acted in wanton and reckless disregard for her rights and emotional wellbeing.

29. As a direct and proximate result of Defendants' unlawful conduct, Ms. Simpson suffered and/or continues to suffer physical, emotional and psychological pain, mental anguish and other losses.

30. The City either knew or should have known that the Individual Defendants were prone to use excessive and illegal force and were likely to engage in such excessive and illegal force.

31. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

FIRST CAUSE OF ACTION
42 U.S.C. § 1983
(Against the Officer Defendants)

32. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set fourth at length herein.

33. By the above, by falsely arresting Ms. Simpson and by failing to take steps to intercede and protect her from the above, the Officer Defendants deprived plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including but not limited to rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

34. The Officer Defendants acted under pretense and color of state law in their individual and official capacities and/or within the scope of their respective employments as NYPD officers. Said acts by the Police Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in the abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured to him by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

35. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
### False Arrest
(Against All Defendants)

36. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

37. The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York. Defendants intended to confine Plaintiff and, in fact, did confine Plaintiff, and Plaintiff was conscious of the confinement. In addition, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

38. Defendants Nelson and Demick were at all times agents, servants, and employees acting within the scope of their employment by New York City and the New York City Police Department, which are therefore responsible for their conduct.

39. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## THIRD CAUSE OF ACTION
### Negligence
### (Against All Defendants)

40. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

41. Defendants owed a duty of care to the Plaintiff.

42. Defendants breached that duty of care by injuring Plaintiff in the course of her arrest.

43. All of the foregoing occurred without any fault or provocation on the part of Plaintiff.

44. Defendants, their officers, agents, servants, and employees were responsible for the harm that occurred to Plaintiff. The City of New York, as the employer of each of

the Officer Defendants, is responsible for the wrongdoing under the doctrine of respondeat superior.

45. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Negligent Hiring, Training, Discipline and
Retention of Employment Services
(Against Defendant City of New York)

46. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

47. The City of New York, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff, or to those in a like situation, would probably result from this conduct.

48. Upon information and belief, Officer Defendants were unfit and incompetent for their positions as police officers.

49. Upon information and belief, the City of New York knew or should have known through the exercise of reasonable diligence that Officer Defendants were dangerous.

50. Upon information and belief, the City of New York's negligence in hiring, training, disciplining, and retaining Police Officer Defendants proximately caused Plaintiff's lasting physical, mental, emotional and professional injuries and scars.

51. Upon information and belief, because of the City of New York's negligent hiring, training, disciple, and retention of the aforementioned police officers, Plaintiff incurred significant and lasting physical, mental and professional injuries.

## JURY DEMAND

52. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

   a. Compensatory damages in the amount to be determined at trial;

   b. Punitive damages against the individual Defendants in an amount to be determined at trial;

   c. Reasonable attorney's fees and cost under 42 U.S.C. § 1988;

   d. Such other and further relief as this Court may deem just and proper.

Dated: Bronx, New York

      August 23, 2012

_____

Steven H. Goldman, Esq.

190 E. 161 Street

Bronx, New York 10451

(718) 538-5743

Attorney for Plaintiff REISHA SIMPSON