N.Y.S.D. Case #
12-cv-6577(KBF)

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: January 9, 2015    Decided: July 15, 2015)

Docket No. 14-680-cv

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 15, 2015

REISHA SIMPSON,

*Plaintiff-Appellant*,

- v. -

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER KENSON NELSON, SHIELD #001838, 40 PCT.,

*Defendants-Appellees*,

SGT. ALLISON DEMICK, SHIELD #001099, CJB,

*Defendant*.

_____

Before:

    HALL, LYNCH, AND CARNEY, *Circuit Judges*.

    Appeal from the United States District Court for the Southern District of New York (Forrest, *J*.) granting summary judgment in favor of appellees on appellant's false arrest claims and on appellee Nelson's assertion of qualified immunity. We hold that the district court erred in granting appellees' motion for summary judgment because on the facts viewed in the light most favorable to appellant, a reasonable juror could conclude that appellee Nelson lacked probable cause to arrest appellant for theft of services and, because it was unreasonable for him to believe there was probable cause, appellee Nelson would not be protected by qualified immunity. The judgment of the district court is VACATED, and the case is REMANDED for further proceedings.

    VACATED and REMANDED.

CERTIFIED COPY ISSUED ON 07/15/2015

> STEVEN H. GOLDMAN, Law Office of Steven H. Goldman, Bronx, NY, *for Plaintiff-Appellant*.
>
> SCOTT SHORR, Assistant Corporation Counsel (Francis F. Caputo, Assistant Corporation Counsel *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

HALL, *Circuit Judge*:

## BACKGROUND

The issue before the Court is whether, on the facts of this case viewed in the light most favorable to Plaintiff-Appellant Reisha Simpson ("Ms. Simpson"), a reasonable juror could find that Defendant-Appellee New York City Police Officer Kenson Nelson ("Officer Nelson") had probable cause to arrest Ms. Simpson for theft of services after she rebuffed his flirtatious advances, entered the back door of the bus she was intending to ride because the driver could not fix the stuck lift at the front entrance and told passengers to enter through the rear, and was proceeding in line to swipe her MetroCard when Officer Nelson intercepted her and made her get off the bus.

Ms. Simpson appeals from portions of a district court order entering summary judgment in favor of Officer Nelson on false arrest claims brought under both 42 U.S.C. § 1983 and New York State law and on grounds of qualified immunity.[1] Because the material facts of this case are in dispute, we emphasize at the outset that we, and the district court, are bound to consider the facts in the light most favorable to Ms. Simpson, the non-moving party. *See Lederman v. NYC Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013) ("We .

---

[1] As noted in more detail below, the issues before us on appeal are limited to those that are raised in appellant's principal brief. We therefore address only Ms. Simpson's claims against Officer Nelson and do not disturb the district court's dismissal of Ms. Simpson's claims against the City of New York, which she abandoned on appeal.

2

. . resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (internal quotation marks and alterations omitted)). Viewing the facts in that light, and drawing all reasonable inferences in Ms. Simpson's favor, the following comprise the material facts of this case.

**A. Factual Background**

In June 2011, Ms. Simpson was walking to the 149th Street and Third Avenue BX19 bus stop in the Bronx when she noticed a crowd of people waiting to board the bus. She also noticed a woman in a mobile walker on a mechanical lift located at the front of the bus, the deck of which was suspended in the air. The lift had malfunctioned, and the bus driver was on the lift attempting to fix it.

While Ms. Simpson waited with the other passengers for the bus driver to fix the lift, Officer Nelson, who had been standing nearby, approached Ms. Simpson and remarked, "You're very pretty." Appellant's App. 164. Ms. Simpson responded, "Thank you." *Id.* at 166. Officer Nelson asked, "What's your name?" and she replied, "Reisha." *Id.* Officer Nelson then asked Ms. Simpson for her last name to which she replied, "I'm not telling you my last name." *Id.* When asked by Officer Nelson why she would not share her last name, Ms. Simpson responded that she was "with someone." *Id.* at 168. Officer Nelson's tone became aggressive and he remarked, "What does that have to do with me? . . . I'm a police officer, you know I can get your last name." *Id.* at 170-72. Ms. Simpson answered, "I know that." *Id.* While Ms. Simpson continued to wait in line to board the bus, Officer Nelson stood an "arm's length away" from her. *Id.* at 180.

3

Eventually the bus driver instructed the passengers to "Go around, go around" and opened the back doors of the bus. *Id.* at 184. Ms. Simpson and the passengers waiting in line then moved to the back entrance. Ms. Simpson boarded the bus and got in line to swipe her MetroCard at the front of the bus. As she neared the front, she heard someone yell, "Hey," and felt something thrust into her side. *Id.* at 190. She looked down and noticed Officer Nelson's police cap. Officer Nelson then asked Ms. Simpson, "Do you have ID?" and she responded, "Yes." *Id.* at 192. Officer Nelson said, "Let me see your ID." *Id.* Because she was about to swipe her MetroCard to pay the bus fare, she replied, "Okay, hold on." *Id.* Officer Nelson then yelled, "Don't swipe that card," again asked Ms. Simpson for her ID, and instructed her to "Come off the bus and show it to me." *Id.* at 192-98. As Ms. Simpson followed Officer Nelson off the bus, passengers yelled, "Is this a group lecture?" and "Do you see the thing in the front, do you see the lift?" *Id.* at 198. Once on the sidewalk, Officer Nelson yelled, "You want to embarrass me?" *Id.* at 201. Ms. Simpson responded, "Sir, I turned you down nicely." *Id.*

Having witnessed the bus driver repairing the mechanical lift, Ms. Simpson asked Officer Nelson, "So, am I getting back on this bus?" *Id.* He did not reply. He then took Ms. Simpson's ID, read her name aloud, and confirmed her address. He also reached into Ms. Simpson's wallet, which was already open, and removed her Police Benevolent Association ("PBA") card.[2] Officer Nelson asked Ms. Simpson if she was "an officer," and she replied that she was. *Id.* at 54. He asked her to which precinct she belonged. *Id.* She replied that she was not with a precinct. *Id.* Officer Nelson put Ms. Simpson's ID card and her PBA

---

[2] A PBA card indicates membership in a police union. Ms. Simpson, a security officer, was a member of the same PBA as New York City Police officers.

card in his shirt pocket. He handcuffed Ms. Simpson and called for a transport car. She was then transported to the precinct and charged with theft of services.

All charges against Ms. Simpson were dismissed in October 2011, some four months later.

## B. Procedural Background

In August 2012, Ms. Simpson filed suit in the United States District Court for the Southern District of New York asserting several causes of action against Officer Nelson, Sergeant Allison Demick, the City of New York, and the New York City Police Department (collectively "Defendants").[3] Ms. Simpson asserted four causes of action: false arrest against Officer Nelson and Sergeant Demick under 42 U.S.C. § 1983 (First Cause); false arrest and false imprisonment under New York State law against all Defendants, including the City of New York because Officer Nelson and Sergeant Demick were acting "within the scope of their employment" (Second Cause); negligence under State law based on injuries allegedly incurred in the course of her arrest against all Defendants, including the City of New York under the doctrine of *respondeat superior* (Third Cause); and negligent hiring, training, discipline and retention of employment services against the City of New York because it "knew or should have known that [Officer Nelson and Sergeant Demick] were dangerous" (Fourth Cause). Appellant's App. at 11-15. The complaint sought compensatory damages, punitive damages and attorney's fees. Defendants denied all allegations.

---

[3] Shortly after the complaint was filed the parties agreed to dismiss all claims against Sergeant Demick. Furthermore, because the New York City Police Department is not a defendant independent from the City of New York, we address all claims against the Department as having been brought against the City of New York.

5

In October 2013, Defendants moved for summary judgment. They argued, *inter alia*, that Ms. Simpson boarded the bus through the back door marked "no entry" and that this undisputed material fact provided sufficient probable cause for her arrest for avoiding the fare. Appellant's App. 49-52. Officer Nelson also argued that he was entitled to qualified immunity.

The following month, during a telephonic hearing with the parties, the district court granted summary judgment in favor of Defendants on the third and fourth causes of action—*i.e.*, the claim for negligence against all Defendants and the claim for negligent hiring against the City of New York. The court denied summary judgment as to Ms. Simpson's first and second causes of action—*i.e.*, the § 1983 cause of action against Officer Nelson and Sergeant Demick for false arrest and the false arrest and false imprisonment cause of action under New York State law against all Defendants. With respect to the first two causes of action, the district court reasoned, in relevant part, that there was a genuine dispute as to whether Ms. Simpson intended to commit theft of services or, in the alternative, intended to impersonate an officer, such that Officer Nelson had probable cause to arrest her.[4]

The district court also rejected Officer Nelson's assertion of qualified immunity.[5]

---

[4] The district court explained:

> [Ms. Simpson] states that the bus driver directed waiting passengers to actually enter through the rear door because of some difficulties the driver was having with the lift at the front of the bus, and that she was actually in line to pay her fare when she was removed from the bus by [Officer Nelson]. So there's a genuine dispute of fact as to the elements of the theft of services [charge as a basis for probable cause for the arrest].

Appellant's App. 29-30.

The following month, however, after further consideration, the district court, *sua sponte*, granted summary judgment in favor of all Defendants on the first and second causes of action. *Simpson v. City of New York*, No. 12 CIV. 6577, 2013 WL 6503521 (S.D.N.Y. Dec. 9, 2013). On the false arrest claim, the district court reasoned that there was no issue of material fact as to whether Officer Nelson was entitled to qualified immunity. The court concluded that because Ms. Simpson had admittedly entered the bus through a back entrance marked "no entry," Officer Nelson could have reasonably believed that Ms. Simpson intended to obtain services without payment and thus had probable cause to arrest her. *Id.* at *4. The court further ruled that Officer Nelson was entitled to qualified immunity because it was "objectively reasonable" for him to believe that Ms. Simpson had committed the offense of theft of services and that Officer Nelson's "'actions were lawful at the time of the challenged act.'" *Id.* at *5 (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)).

Ms. Simpson moved for reconsideration. In its subsequent denial, the district court stated that it had considered Ms. Simpson's factual allegations, including the allegation that Officer Nelson was aware that Ms. Simpson boarded the back of the bus only as a result of the driver's instruction, but ultimately reiterated that these allegations were "mere

---

[5] The district court further explained:

> [T]here are issues relating to impersonating an officer, and also as to the theft of services, and those disputes are sufficiently factually based that if the plaintiff were, in fact, correct about her version of events, then it is possible that a rational jury could find that qualified immunity here does not attach.

Appellant's App. 30.

7

speculation and conjecture" and could not survive summary judgment. *Simpson v. City of New York*, No. 12 CIV. 6577, 2014 WL 595759, at \*2 (S.D.N.Y. Feb. 10, 2014) (internal quotation marks omitted). The district court further stated that because Ms. Simpson did not dispute that Officer Nelson saw her "board a bus through the rear doors, which were marked 'no entry' without paying the fare," Officer Nelson's subjective intent in arresting her was irrelevant. *Id.* at \*3 (internal citation omitted). This appeal followed.

## DISCUSSION

We begin by noting the issues on appeal. Contrary to Ms. Simpson's assertions in her reply brief, her claims against the City of New York are not properly before us. *See Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir. 1993) (concluding that "[a]rguments may not be made for the first time in a reply brief"). Her principal brief advances no arguments as to why the claims against the City of New York were improperly dismissed. In fact, there is no discussion whatsoever of the City's *respondeat superior* liability. Accordingly, we limit our consideration to those portions of the district court's decisions granting summary judgment in Officer Nelson's favor as to the § 1983 and State law false arrest claims and granting Officer Nelson qualified immunity.

We review *de novo* an order granting summary judgment. *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008). "We will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). In making this determination, as already noted, we "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lederman*, 731 F.3d at 202 (internal quotation

marks and alterations omitted). "The judge must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks and alterations omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Id.* (internal quotation marks omitted).

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)). To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity. *See Weyant*, 101 F.3d at 852. A finding of probable cause is a complete defense to false arrest claims. *See Jenkins*, 478 F.3d at 84. An arresting officer has probable cause when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852. When determining whether probable cause existed to support an arrest, we "consider those facts available to the officer at the time of arrest and immediately before it," and we must render our decision based on the "totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

### A. Theft of Services

We first consider whether the facts, viewed in the light most favorable to Ms. Simpson, provided Officer Nelson probable cause to arrest her for theft of services. As relevant to the facts of this case, under New York State law, a person is guilty of theft of services when:

> With intent to obtain . . . bus . . . service without payment of the lawful charge therefor, . . . [s]he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay[.]

N.Y. Penal Law § 165.15(3). The district court rested its decision on Officer Nelson's assertion that he "saw [Ms. Simpson] board a bus through the rear doors, which were marked 'no entry,' without paying the fare," concluding that this undisputed fact was "sufficient to provide [Officer] Nelson with the belief that plaintiff intended to obtain bus service without payment of the lawful charge." *Simpson*, 2013 WL 6503521, at *4. In so doing, the district court limited its consideration of the facts to those undisputed by either party and failed to consider—in the light most favorable to Ms. Simpson—any facts that were in dispute. We disagree that the lens through which the totality of the events must be viewed may be so narrowly focused, to the exclusion of contextual facts, on Ms. Simpson's entry through the back doors of the bus. To the extent that Officer Nelson argues that the district court was not properly presented with Ms. Simpson's current recitation of the material facts, we disagree. Although there may have been some factual claims that were not included in full detail in Ms. Simpson's response to Officer Nelson's motion for summary judgment, the district court made clear that it had reviewed and considered Ms. Simpson's

recounting of each of those claims and obviously had them in mind when granting summary judgment in Officer Nelson's favor.[6]

Viewing the full factual context in the light most favorable to Ms. Simpson, however, it is apparent that there is a genuine issue for a jury as to whether a reasonable officer in Officer Nelson's position could have had reasonable grounds to believe that she intended to commit, or was committing, theft of services cognizable under N.Y. Penal Law § 165.15(3) and consequently whether Officer Nelson had probable cause to arrest her or reasonably hold the mistaken belief that he did. We highlight but a few of the more pertinent facts. First, Officer Nelson was aware of the problems with the mechanical lift which blocked the front entrance to the bus, given that he was only an "arm's length" from Ms. Simpson while she waited to board the bus. Appellant's App. 180. Next, by the same token, Officer Nelson was in a position easily to hear the bus driver direct passengers to "Go around, go around" to the back of the bus and also to witness the bus driver open the back doors. *Id.* at 184. In fact, viewing the facts as we must, Officer Nelson would have had to have been visually and aurally impaired to miss this chain of events. Finally, according to Ms. Simpson,

---

[6] In its order denying Ms. Simpson's motion for reconsideration the court wrote:

> Plaintiff asserts that there was a problem with the lift at the front of the bus; that the bus driver directed passengers to enter through the rear door; that plaintiff entered the bus with a crowd of passengers and waited in line to pay her fare; that defendant Nelson became upset when plaintiff rebuffed his sexual advances; and that Nelson prevented her from paying her fare. Those are the same facts that plaintiff alleged in her papers on summary judgment, and which the Court acknowledged and discussed in its decision.

*Simpson*, 2014 WL 595759, at *1 (internal citation omitted).

Officer Nelson observed Ms. Simpson board the bus and wait in line to pay her fare before arresting her.

Not surprisingly, Officer Nelson's account conflicts with Ms. Simpson's. For instance, he swore that Ms. Simpson was approximately "two arm lengths" from the bus when he first saw her. *Id.* at 148. He also asserts that he witnessed Ms. Simpson "use[ ] the back door to get inside the bus" while all other passengers boarded through the front door, thus calling into question whether there was a problem with the lift, and whether the lift was blocking the entrance in the first instance. *Id.* Officer Nelson professes to have no recollection of whether Ms. Simpson displayed her MetroCard or identification—or whether he requested to see either item—before, during, or after the arrest.

At best, these juxtaposed versions of the events call into question the veracity of both parties. Ms. Simpson's version suggests a plausible motive for Officer Nelson's behavior as alleged by her: his advances were rebuffed, and he undertook a course of action to demonstrate unequivocally that he could obtain Ms. Simpson's surname and exert significant control over her. Officer Nelson's version, on the other hand, suggests that there was no problem with the front entrance of the bus and Ms. Simpson was a scofflaw trying to avoid paying the fare. Of course, we may not, and do not, resolve these disputed issues of fact. *See Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (internal quotation marks omitted)). It is enough on this appeal that we make clear that the series of events leading up to and following Ms. Simpson's entry through the back door of the BX19 bus that June evening are in genuine dispute and on Ms. Simpson's version, which

a jury would be entitled to credit, Officer Nelson was aware of facts that should have made it clear to a reasonable officer that she was not trying to avoid paying her bus fare.[7] Officer Nelson is not entitled to summary judgment in his favor on either the § 1983 or New York State law false arrest claims.

### B. Criminal Impersonation

The district court's order granting summary judgment did not resolve the issue of whether Officer Nelson also had probable cause to arrest Ms. Simpson for criminal impersonation,[8] and Officer Nelson does not argue on appeal this alternative basis justifying Ms. Simpson's arrest. The issue has been raised by Ms. Simpson on appeal, however, and it assumes new significance given our conclusion that there are material facts in dispute as to whether there was probable cause to arrest Ms. Simpson for theft of services.

---

[7] Defendants argue that once Officer Nelson saw Ms. Simpson enter the bus, he was not obligated to permit her to attempt to evade the charge of theft of services by swiping her MetroCard at that point, relying on *Mazurkiewicz v. NYC Transit Authority*, 810 F. Supp. 563 (S.D.N.Y. 1993). That case, however, is inapposite. The plaintiff in *Mazurkiewicz* offered to pay a subway fare only after he was accosted by police officers who observed him jump the turnstile. *Id.* at 565. It was reasonable for those officers to believe that plaintiff would not have paid had he escaped unnoticed. Here, by contrast, Ms. Simpson testified that she was already waiting in line to pay her fare when she was accosted by Officer Nelson. The facts supporting an inference of intent to steal transit services are therefore very different from those in *Mazurkiewicz*.

[8] The district court included the following footnote:

> Plaintiff focuses her argument regarding probable cause entirely on the charge of criminal impersonation. (*See* Pl.'s Opp. 4-8 ("Defendant is wrong, however, that Plaintiff committed the crime of criminal Impersonation [sic].").) However, the parties agree that defendant Nelson in fact arrested plaintiff for theft of services, not criminal impersonation. (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 5.)

*Simpson*, 2013 WL 6503521, at *3 n.3. It is not as clear to us the role or weight assigned to this proposition by the district court.

14-680-cv
Reisha Simpson v. City of New York

This Court has long held that an arresting officer need not have probable cause "with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest," so long as the officer had probable cause to make an arrest for any crime, not necessarily the crime charged, at the time of the arrest. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Despite the fact that Ms. Simpson was not charged with criminal impersonation, and although the district court did not determine whether Officer Nelson had probable cause to arrest her on that basis, we now reach that issue in light of our determination that probable cause cannot be found as a matter of law to support her arrest for theft of services and because this case is remanded for further proceedings.

Under New York law, a person is guilty of criminal impersonation in the second degree when she:

> (a) Pretends to be a public servant, or wears or displays without authority any uniform, badge, insignia or facsimile thereof by which such public servant is lawfully distinguished, or falsely expresses by h[er] words or actions that [s]he is a public servant or is acting with approval or authority of a public agency or department; and (b) so acts with intent to induce another to submit to such pretended official authority, to solicit funds or to otherwise cause another to act in reliance upon that pretense.

N.Y. Penal Law § 190.25(3).

Officer Nelson argued on summary judgment that he had reason to believe that Ms. Simpson was "pretending to be an officer with the hope that if Officer Nelson thought she was an officer she would not be [ ] arrested." Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J., No. 12-cv-6577, Doc. 19 at 4. He asserted that Ms. Simpson "h[eld] her wallet open on the street such that her union membership card . . . was exposed" and that she was "attempting to deliberately display her membership card to him." *Id.*

The facts viewed in the light most favorable to Ms. Simpson paint a completely different picture. Officer Nelson asked whether she was an officer only after he had reached into her wallet without her permission and removed her PBA card. Officer Nelson admits that he retrieved Ms. Simpson's PBA card from her wallet. On these facts there is no basis to conclude that she held herself out as a public servant. It would be error, therefore, to determine on summary judgment that there was probable cause to arrest Ms. Simpson for criminal impersonation.

### C. Qualified Immunity

We turn to whether Officer Nelson is entitled to qualified immunity at this stage of the proceedings. "A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone*, 246 F.3d at 199 (internal citation and quotation marks omitted).

There is no disagreement that for Ms. Simpson's arrest to have been lawful it must have been supported by probable cause, and that the requirement of probable cause was clearly established at the time of the arrest. Qualified immunity therefore hinges first on whether Officer Nelson had probable cause for the arrest. Because, as discussed above, there are material facts in dispute regarding whether there was probable cause to arrest Ms. Simpson, we cannot uphold, on the basis that there was no constitutional or State law violation, the district court's determination that Officer Nelson is entitled to qualified immunity. We therefore turn to the second prong of the qualified immunity analysis and

evaluate whether it was objectively reasonable for Officer Nelson to believe his actions were lawful at the time he arrested Ms. Simpson.

The second prong of the qualified immunity analysis "permits [this] court to grant summary judgment if a reasonable officer could have believed his or her actions were lawful." *Id.* at 202. An officer need only have "arguable probable cause," which exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). In this case, the district court concluded that "[e]ven if the bus driver had instructed passengers to enter through the rear door and plaintiff was waiting in line to pay her fare at the time of her arrest . . . [Officer] Nelson was entitled to a reasonable belief that plaintiff was intending to obtain bus service without payment . . . simply by virtue of seeing plaintiff enter the rear doors of the bus marked 'no entry' without paying the fare." *Simpson*, 2013 WL 6503521, at *5 (internal quotation marks and alterations omitted). We disagree.

On the facts viewed in the light most favorable to Ms. Simpson, a passenger was stuck on the lift at the front of the bus. The bus driver directed the crowd, which included Officer Nelson and Ms. Simpson, to "Go around, go around" to the back entrance of the bus, and he opened the back doors. Ms. Simpson and the other passengers then moved to the back entrance and boarded. Once on the bus, Ms. Simpson waited in line behind other passengers to swipe her MetroCard. Officer Nelson stopped Ms. Simpson, ordered her not to pay her bus fare, and demanded that she follow him off the bus. On these facts, no reasonable officer could have concluded that Ms. Simpson intended to commit theft of

16

services any more than a reasonable officer could have concluded that a person at the grocery store directed to a checkout counter and waiting in line to pay for produce intended to commit petit larceny. Add to this scenario the reasonable inference that Officer Nelson (1) was upset by having been rebuffed and (2) was merely demonstrating his dominance, and any pretense of reasonableness flies out the window. Because the facts bearing on whether Officer Nelson is entitled to qualified immunity are in dispute, the grant of summary judgment on that basis is vacated.

## CONCLUSION

For the reasons stated above we vacate the district court's grant of summary judgment in favor of Officer Nelson on the merits and with respect to qualified immunity, and we remand for further proceedings consistent with this opinion. The judgment in favor of the City of New York, which Ms. Simpson does not properly challenge on appeal, is affirmed.

17

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit