USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 9, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
REISHA SIMPSON, :
:
      Plaintiff, : 12 Civ. 6577 (KBF)
  -v- :
: MEMORANDUM
: OPINION & ORDER
THE CITY OF NEW YORK, et al., :
:
      Defendant. :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

  Plaintiff brings this action against defendant, New York City Police Officer Kenson Nelson, for false arrest and false imprisonment following an interaction on a New York City public bus in June 2011. Plaintiff was arrested for theft of services in violation of N.Y. Penal Law § 165.15(3) after boarding an MTA bus through the rear door. At issue is whether Officer Nelson had probable cause to arrest plaintiff, or if the arrest was purely pretextual and unsupported by any evidence that plaintiff violated the law.

  This case is scheduled for a jury trial commencing on October 19, 2015. Before the Court are a number of motions in limine. The Court's rulings are set forth below.

I.   LEGAL STANDARD

  The purpose of a motion in limine is to allow the trial court to rule on the admissibility and relevance of certain anticipated evidence before that evidence is actually offered at trial. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984);

1

Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996). The trial court should only exclude the evidence in question "when [it] is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted).

The Federal Rules of Evidence govern the admissibility of evidence at trial. Under Rule 402, evidence must be relevant to be admissible. Fed. R. Evid. 402. Evidence is relevant if it has a tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. In addition to relevancy, admissibility turns on the probative value and prejudice of the evidence in question. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Second Circuit has instructed that the "[d]istrict courts have broad discretion to balance probative value against possible prejudice" under Rule 403. United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008) (citing United States v. LaFlam, 369 F.3d 153, 155 (2d Cir. 2004)).

Motions in limine are necessarily pretrial motions. As a result, this Court does not have the benefit of evidence that may come in and connections that may be made at trial. A lot can happen during a trial. It is possible that as the trial record develops, it would be in the interests of justice to revisit prior rulings. Accordingly, should the record develop in manner not currently anticipated, or other matters

make it clear that the basis for this Court's ruling has been undermined, a party may renew a motion.

II. DISCUSSION

A. <u>Plaintiff MIL #1: Evidence of a plaintiff's prior arrest</u>

Plaintiff has requested that the Court preclude evidence of a prior arrest that resulted in a one-week period of incarceration 15 years ago. Plaintiff asserts that her arrest record is irrelevant to any issue in this case and that it would be offered solely to impugn her character. The Court disagrees.

Plaintiff seeks damages based on, inter alia, the fact and experience of her arrest and incarceration for a period of less than a day. According to defendant, plaintiff testified at her deposition that she experienced no trauma in connection with a prior arrest and a one week period of incarceration 15 years ago. This evidence is probative of damages plaintiff may have suffered in connection with her 2011 arrest and incarceration. While there may be many reasons why the two arrests/ incarceration periods could be experienced differently, that is for direct and cross-examination and the jury to determine.

The Court has also considered whether, even if relevant, such evidence should be precluded under Rule 403 of the Federal Rules of Evidence. It should not. Any prejudice or confusion does not outweigh the probative value of the evidence, let alone "substantially outweigh" it, and may be remedied by a limiting instruction. Fed. R. Evid. 403. The Court is willing to give an appropriate limiting instruction to the jury if plaintiff requests.

Accordingly, plaintiff's MIL #1 is DENIED.

3

B.  Plaintiff's MIL #2:  Plaintiff's employment history

Plaintiff seeks to preclude evidence regarding her employment history. Plaintiff argues that as there is no lost earnings claim, inquiry into her past employment is irrelevant.  Plaintiff also argues that even if such evidence is relevant, it should be precluded under Rule 403.

Defendant argues that evidence as to plaintiff's employment history is not offered to rebut an earnings-based damages claim, but rather to show a false statement under oath.  According to defendant, until recently, plaintiff had taken the position that lost earnings was part of her overall damages claim.  According to defendant, plaintiff asserted lost income as a result of the incident in sworn interrogatory responses.  Defendant also represents that plaintiff subsequently testified at her deposition that after her arrest in this case, her wages had actually increased.  Defendant seeks to use this inconsistency as probative of plaintiff's truthfulness/untruthfulness.  The Court agrees that plaintiff's inconsistent statements under oath may be used in this manner.  However, the Court is willing to give the jury an appropriate limiting instruction if plaintiff so requests.

Accordingly, plaintiff's MIL #2 is DENIED.

C.  Plaintiff's MIL #3:  Prior consistent statements

At the heart of plaintiff's claim is her contention that her arrest by Officer Nelson was pretextual and retaliatory: she had allegedly rebuffed flirtatious advances he made while she was waiting for the bus to arrive.  Officer Nelson denies that he ever engaged in flirtatious behavior and insists that this version of events has only been belatedly proffered by plaintiff to save her case.  Plaintiff did

4

not refer to Officer Nelson's allegedly flirtatious conduct in either her complaint in this matter, or, according to defendant, during her "50-H" hearing testimony.[1]

In this motion, plaintiff seeks a preliminary ruling—should she be questioned in a manner suggesting that she recently fabricated the flirtatious conduct of defendant Officer Nelson—that she be permitted to introduce prior <u>consistent</u> statements. In particular, plaintiff would like to introduce a diary entry she wrote, as well as call witnesses (none of whom are identified in this motion).

Defendant counters that there is no available hearsay exception for plaintiff's allegedly consistent statements. Defendant argues that while the rules of evidence provide that a consistent statement may be offered to rebut an assertion or suggestion that a claim has been fabricated, it is unavailable here as plaintiff was under the influence of an improper motive. According to defendant, because the motive to fabricate arose shortly after her arrest (when, defendant alleges, plaintiff began to consider civil litigation) and the diary was the beginning of the fabrication.

Plaintiff was arrested on June 16, 2011; she filed suit over a year later, on August 28, 2012. According to defendant, at her deposition plaintiff apparently testified that she contemplated bringing suit at the time of her arrest.[2] In addition, defendant asserts that within a month of the incident, plaintiff's counsel in this civil case had been in communication with plaintiff's criminal counsel, further

---

[1] New York General Municipal Law §50(h) provides for hearings of individuals who have filed a notice of claim against the City. These hearings, which are conducted under oath, allows the city investigate allegations before the claimants commence an action. The Court has not seen a full transcript of plaintiff's 50-H hearing.
[2] The Court has not seen a full transcript of plaintiff's deposition.

5

demonstrating plaintiff's intent to file a civil action "since the inception." And finally, according to defendant, the evidence supports that plaintiff wrote her journal entry only after she had filed a complaint with the police department regarding the incident.

Rule 801(d)(1)(B) excludes from the rule against hearsay any consistent statement offered to "rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801. Courts have clarified the rule to require three elements: "(1) that the prior consistent statement is consistent with the witness's in-court testimony; (2) that the prior consistent statement is being offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; and (3) that the prior consistent statement was made prior to the time that the supposed motive to falsify arose." Phoenix Assoc. III v. Stone, 60 F.3d 95, 103 (2d Cir. 1995) (internal citations and quotation marks omitted). The third, temporal, element, though not expressed on the face of Rule 801(d)(1)(B), was clearly set forth in Tome v. United States, 513 U.S. 150, 158 (1995) as a requirement of the statute. Thus, the prior consistent statement exclusion privileges statements made by a declarant before any motive to fabricate arose, versus those made after. In and only in that context, according to caselaw, it also privileges older consistent statements over new ones, _if_ the fabrication itself is alleged to be recent.

6

The Second Circuit has also held that a prior consistent statement not admissible under Rule 801(d)(1)(B) may be admissible if offered for <u>rehabilitation</u> purposes; that is proper "if it 'has probative force bearing on credibility beyond merely showing repetition' . . . and 'tends to cast doubt on whether the . . . impeaching statement is really inconsistent with the trial testimony,' or if it 'will amplify or clarify the alleged inconsistent statement.'" <u>United States v. Castillo</u>, 14 F.3d 802, 808 (2d Cir. 1994) (quoting <u>United States v. Pierre</u>, 781 F.2d 329, 333 (2d Cir. 1986)). If there is no "probative force beyond showing consistency at an earlier time," a prior consistent statement is still not admissible even for rehabilitation. <u>Castillo</u>, 14 F.3d at 808.

Here, defendant urges a motive to fabricate existed "since the inception." The Second Circuit's construction of the three-factor test set out above amounts to an inability for virtually any civil plaintiff to take advantage of Rule 801(d)(1)(B) for his or her own consistent statement, since by definition that plaintiff would very likely have some motive to fabricate. Thus, such a declarant's prior consistent statement—as long as it was made after the intention to bring suit arose—can likely never meet the strict temporal requirement of Rule 801(d)(1)(B). These statements would, by definition, not be admissible for substantive purposes. This law suggests that plaintiff cannot offer her prior statement for substantive purposes (e.g., for the truth).

However, if plaintiff only seeks to introduce the diary for <u>rehabilitation</u> purposes, Rule 801(d)(1)(B) does not apply. <u>See</u> <u>Castillo</u>, 14 F.3d at 808. If the

7

diary and other witness testimony "significantly flesh[] out the alleged inconsistent statement," Castillo, 14 F.3d at 808, then it could be admissible for rehabilitation. Instances in which a prior consistent statement is merely used "to show that the declarant told the same story twice" have been deemed insufficient for the "rehabilitation" purpose. Id. (internal citations and quotation marks omitted).

In addition to the above, there are other possible impediments to admissibility of this evidence. The Court has serious concerns regarding nonproduction of the diary. The Court has few facts on the alleged diary. The facts it does have—that one exists and contains at least one statement about the incident, but that the diary has otherwise been withheld—are troubling. Defendant has not been able to test the veracity of the diary entry as in fact coming from a regularly-maintained diary. However, if plaintiff did maintain a diary of her thoughts and feelings before and after the incident, many entries could be highly relevant indeed. If nothing in the diary references the trauma plaintiff asserts she experienced following the incident, that fact would be highly probative. Indeed, the diary might reveal trauma based on other incidents. If, on the other hand, entries support plaintiff's claims of trauma and after effects, then they would be relevant for that reason. The Court cannot fathom why the entire diary has not been produced.

As to witness testimony, whether the witness would be allowed remains to be seen. No witness can be called who has not been disclosed in a Rule 26 disclosure or otherwise adequately noticed to defendant. The Court therefore assumes that

whomever plaintiff has in mind for a corroborating witness has been appropriately disclosed.

The Court will certainly allow defendant to use inconsistent statements to impeach plaintiff's credibility.  The Court will not, on this motion, rule on plaintiff's own use of any prior <u>consistent</u> statements, but notes that if the evidentiary requirements are met, the evidence would be allowed.

Accordingly, plaintiff's MIL # 3 is DENIED.

D. <u>Plaintiff's MIL #4:  MTA driver testimony</u>

Another central fact for plaintiff is that the bus she was attempting to board had a "frozen lift," which allegedly resulted in the bus driver requiring passengers to enter through the rear door and line up thereafter to pay the fare.  To counter this story, defendant seeks to call the bus driver who has been identified as the likely driver during the incident: he was scheduled to drive the route on the date and time of the incident.  The bus driver, however, lacks any recollection of whether he drove that route that day or of the incident.

Plaintiff seeks to preclude defendant from calling the identified bus driver on the basis that, since he cannot recall the actual event, he would merely be testifying about MTA policy and practice regarding what drivers should do in case of equipment malfunction, and that he is unqualified to do so.  Plaintiff also expresses concern that the bus driver may be questioned as to how he would handle certain hypothetical situations.  Defendant counters that the witness will not be asked hypotheticals but will be questioned on his knowledge as to procedures for dealing with an equipment malfunction of the sort plaintiff alleges occurred.

9

This is highly relevant testimony. Assuming a proper foundation is laid, the testimony from the bus driver would be allowed. To be clear, the Court assumes he will be questioned as to whether he was driving that route on that day and whether he recalls an equipment malfunction of that type, or whether he ever experienced a malfunction of that type during a particular timeframe. Such questions would be based on his recollection (or lack of recollection) and would not be hypothetical.

Accordingly, plaintiff's MIL # 4 is DENIED.

E.   Plaintiff's MIL #5:  Bank records

Another fact in issue is plaintiff's contention that she possessed an unlimited-ride Metro Card at the time of her arrest. Plaintiff seeks to introduce certain bank records to corroborate her assertion that she in fact purchased a card and indeed had a pattern of card purchases. By this motion, she seeks to preclude defendant's introduction or use of her financial records for another purpose. Defendant counters that he is unclear as to what plaintiff is specifically seeking to preclude, but that in any event, all of plaintiff's bank records are inadmissible. The Court will deal separately with the limited admissibility of the records relating to Metro Card purchases if defendant pursues an objection. Accordingly, plaintiff's MIL #5 is GRANTED as unopposed.

F.   Plaintiff's MIL #6:  Testimony from plaintiff's former fiancé.

Plaintiff intends to call her former fiancé as a witness in this case. According to plaintiff, her former fiancé (Phillip Roberts) has firsthand knowledge as to her behavior following the incident at issue in this trial, including that plaintiff would require him to change clothing, which appeared similar to a police uniform, before

interacting with her. Plaintiff moves to preclude defendant from examining Roberts as to his own pending personal injury action in an unrelated case. According to plaintiff, the only purpose of such questioning would be to demonstrate that he, and by association, plaintiff, are litigious.

Defendant has separately moved to preclude Mr. Roberts as a witness altogether. (Defendant's MIL #4.) Defendant argues that Mr. Roberts lacks firsthand knowledge and is not qualified to discuss symptoms plaintiff may have exhibited after the incident.

Based on plaintiff's proffer that Mr. Roberts does have some firsthand information, including with regard to his interaction with plaintiff following the incident, the Court will allow him to testify. Of course, Mr. Roberts should not stray into the medical testimony, but he can testify as to his personal observations of plaintiff's demeanor. This testimony is probative of injury plaintiff may have suffered. Mr. Roberts's testimony shall be limited solely to information as to which he has firsthand knowledge. To insure the testimony is appropriately limited, the Court requires that plaintiff make a full proffer of Mr. Roberts's testimony prior to his taking the stand.

With regard to plaintiff's motion to limit cross examination, the Court does not yet have sufficient information to rule on that motion. If plaintiff is expected to be a witness at Mr. Roberts's civil trial, or has made any submission in connection with Mr. Roberts's claim, including being listed as a person with knowledge on any subject, the Court would then certainly allow cross examination about that suit.

11

This would raise issues of a quid pro quo that goes directly to bias and credibility. However, if defendant's point is merely that somehow Mr. Roberts's suit demonstrates that he and plaintiff are litigious, the Court finds that an unpersuasive basis for examination on this topic.

Accordingly, plaintiff's MIL #6 regarding scope of cross examination is held in abeyance, and defendant's MIL #4 to preclude Mr. Roberts is DENIED.

G. Defendant's MIL #1: Disciplinary histories

Plaintiff has not opposed this motion; it is therefore GRANTED. Plaintiff is precluded from inquiring about the disciplinary histories and/or other civil rights actions filed against defendant Officer Nelson or other officer witnesses.

H. Defendant's MIL #2: Changing caption/ referring to City counsel

Plaintiff has consented to defendant's request to change the caption for trial. That portion of the motion is therefore moot. Defendant separately seeks to preclude plaintiff from referring to counsel for Officer Nelson as "the City's counsel." This is a standard request in these types of actions. Defendant's concern is that connecting counsel to the City suggests involvement by the City; this, in turn, could cause the jury to view liability less critically, and suggest the presence of a deep pocket. The Court agrees that this is a valid concern. While the City is involved in this litigation, that fact is irrelevant to the determination of liability and damages which should be based solely on the facts and the law.

Plaintiff suggests that this Court adopt the language used by another judge in this district of "Corporation Counsel." This Court declines to do so here. A reference to "Corporation Counsel" may itself be misunderstood by jurors as

12

suggesting some association with a corporation, leading to the same associations with a deep pocket.

Accordingly, defendant's MIL #2 is GRANTED. The parties and the Court shall refer to counsel for defendant Nelson as "defendant Nelson's lawyer/counsel/attorney."

I.  Defendant's MIL #3:  Specific dollar amount

Defendant argues that plaintiff should be precluded from specifying a particular dollar amount of damages to the jury, as that may give such amount undue weight. Plaintiff correctly notes that the law in this Circuit requires a court to consider the facts of each case and determine whether limitations on a request for a specific dollar amount is warranted. See Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1174 (2d Cir. 1974). Plaintiff argues that some guidance to the jury is appropriate in this case as a loss of liberty is outside the experience of the average juror.

Plaintiff has not proffered what it is that she intends to say to the jury regarding damages, and the basis for any such position. No particular reason has been offered as to why plaintiff's view as to a monetary value for her loss of liberty is more accurate than the view of a jury drawn from a cross-section of society. The Court shares the concern that articulating a particular number to the jury will unfairly influence them—and indeed believes that the only reason to articulate a number is for the purpose of doing just that.

Accordingly, defendant's MIL #3 is GRANTED.

13

J.     <u>Defendant's MIL #4: Plaintiff's former fiancé as a witness</u>

This motion is addressed under plaintiff's overlapping MIL # 6. Defendant's MIL #4 is DENIED as discussed above.

K.     <u>Defendant's MIL #5: Testimony regarding a Metro Card</u>

In this false arrest case, a dispositive issue is whether it was reasonable for Officer Nelson to believe (or whether he in fact believed) that plaintiff did not intend to pay for bus service. Plaintiff denies that she intended to evade the bus fare and argues that her arrest on that ground was pretextual. According to plaintiff, the fact that she had a valid, unlimited-ride Metro Card at the time of the incident, and had a history of buying Metro Cards, is probative of her intent to pay. Plaintiff states that she also testified at her deposition that during the incident, when she was about to swipe her card, Officer Nelson yelled "Don't swipe that card" and therefore had to have known she had a card.[3] According to defendant, this point is undermined by plaintiff's testimony that, for some reason, she never showed the Metro Card to Officer Nelson but instead had secreted it until she went to Central Booking. The Court assumes both parties are accurately describing the testimony—and it is possible to reconcile both portions.

If the record only reflected defendant's version of events, and no evidence supported Officer Nelson's knowledge that plaintiff possessed a Metro Card, the Court would agree that such evidence should be precluded as irrelevant to the officer's determination of probable cause. But, if both portions of the deposition are

---

[3] The Court also notes that in paragraph 15 of her complaint, plaintiff alleges that she was about to swipe her Metro Card when she was stopped by Officer Nelson.

14

accurate, then the Court must move on to the next issue—defendant's claim of spoliation—as the card at issue long ago went missing.

Plaintiff asserts that the circumstances surrounding the disappearance of the card are innocent and understandable: she gave the card to her overburdened Legal Aid lawyer, who used it for her criminal proceeding and succeeded in getting the charges dropped. Thereafter, the card was lost. Apparently, plaintiff did not personally possess her card after providing it to her criminal counsel. There is also no evidence of which the Court is aware that criminal counsel had a preservation obligation with regard to the <u>civil</u> case after the criminal charges were dismissed.

To support the existence of the card, plaintiff would testify at trial that she purchased and possessed the card; she would also testify to a pattern of such purchases.[4] She would offer bank records to support this claim, as well as testimony of her criminal defense attorney (to support both the existence of the card and circumstances of its disappearance). Defendant argues that this explanation is insufficient, that the Court should find the evidence has been spoliated, and impose the remedy of precluding all testimony that a card once existed.

The law requires that a plaintiff preserve all evidence relevant to any claim or defense. <u>Kronisch v. United States</u>, 150 F.3d 112, 126-27 (2d Cir. 1998). A plaintiff's preservation obligation arises when plaintiff understood that litigation was probable—this may well be prior to the commencement of a case. <u>Id.</u> Failure to preserve relevant evidence may, if plaintiff had the requisite state of mind,

---

[4] The pattern would be probative of the existence of the card in question on the date of the incident.

constitute spoliation. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).) Plaintiff—not her counsel alone—had an obligation to preserve relevant evidence. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must . . . ensure the preservation of relevant documents."); see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) ("A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation."), abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012). But even if this Court were to find spoliation, it has wide discretion to determine the appropriate remedy. West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

On these facts, in which a potentially unknowing criminal attorney loses the Metro Card, a hearing is required to determine if there has been spoliation. Not all loss of evidence rises to the level of spoliation. On the one hand, based on the defendant's proffer that plaintiff contemplated bringing a civil claim immediately after her arrest and that records indicate her civil counsel was in communication with her criminal counsel within a month of the incident, plaintiff had a clear preservation obligation at a time when she—through her counsel—allegedly still possessed the card. The Court also notes that plaintiff's complaint states that the criminal proceeding lasted three and one half months, and thus there could well be an overlap between the criminal matter and civil preservation obligations. But, on

16

the other hand, the Court has no information as to whether, after an initial period of communication shortly after the incident, civil counsel or plaintiff informed criminal counsel of the likelihood of civil litigation and the need to preserve the card. The Court also has no information as to whether plaintiff's civil counsel informed plaintiff of her obligation to insure the card was preserved and to take possession of it at the conclusion of the criminal case.

The level of knowledge and course of events is relevant to the Court's determination of any remedy (if spoliation occurred). Preclusion of evidence is by no means automatic. There are obvious alternatives to preclusion, such as instructions to the jury.

Accordingly, defendant's MIL #5 is held in abeyance pending a hearing.

L.      Defendant's MIL # 6: Disposition of criminal charges

The criminal charges that were brought following plaintiff's arrest were eventually dropped. Defendant seeks to preclude testimony regarding the disposition of those charges. Plaintiff argues that the fact that the charges were eventually dropped supports her story that her arrest and incarceration were improper. In addition, an improper arrest of a law-abiding citizen could certainly be traumatic, supporting her claim for damages. The Court agrees that, in this case, the disposition of the criminal case is probative of core issues. The Court understands that dropping charges may be done for many reasons having nothing to do with actual innocence, and for that reason the fact that the charges were dropped is not dispositive. If defendant wants a limiting instruction on this issue, he should propose one.

17

Accordingly, defendant's MIL # 6 is DENIED.

M. <u>Defendant's MIL # 7: Citibank records</u>

The Court assumes that plaintiff and defendant will agree to stipulate to the admissibility of bank records, thereby rendering defendant's MIL #7 moot.[5]

N. <u>Defendant's MIL # 8: Failure to issue a desk appearance ticket</u>

One assertion that has come up from time to time in this case is whether, assuming his contention that plaintiff did not pay the bus fare is true, Officer Nelson should have issued plaintiff a desk appearance ticket instead of arresting her. Defendant contends that plaintiff should be precluded from arguing that the failure to issue such a ticket gives rise to damages. Plaintiff has failed to address this issue in her opposition to the motions <u>in limine</u>.

Accordingly, defendant's MIL #8 is GRANTED as unopposed.

O. <u>Defendant's MIL # 9: Damages based on events at the precinct</u>

Defendant seeks to preclude plaintiff from basing any portion of her damage claim on alleged behavior by Officer Nelson once he had brought plaintiff back to the stationhouse or the conditions which plaintiff endured while there. Plaintiff argues, in sum, that the impact of the arrest and the trauma she experienced from it includes her treatment at the stationhouse.

---

[5] To the extent that this motion incorporates a motion to preclude evidence as to other Metro Card purchases, the Court's ruling would depend on the outcome of defendant's MIL #5 on Metro Cards above. Notwithstanding the spoliation issue, a pattern of Metro Card purchases is probative of whether there was probable cause based on non-payment. While Officer Nelson cannot be expected to have known of plaintiff's past history, plaintiff's assertion that non-payment was pre-textual is corroborated by her pattern of purchase history.

It is certainly possible that particular treatment would affect the impact of an event. If plaintiff was treated in a particular manner that she believes increased the trauma she experienced, that is certainly relevant to damages based on the overall experience.

Accordingly, defendant's MIL # 9 is DENIED.

P.   Defendant's MIL # 10: Plaintiff as a Security Guard or Security Officer

The incident at the heart of this case involves an assertion by Officer Nelson that when he requested identification from plaintiff, she displayed a membership card for the Special and Superior Officer's Benevolent Association; he then asked her if she was "an officer," and she stated that she was. Plaintiff does not contest this chain of events, but asserts that she was in fact employed as a Security Officer at the time, and that the identification at issue related to that employment. Defendant argue that plaintiff is in fact licensed only as a "guard" not an "officer," and should be precluded from referring to herself as a "security officer." The Court disagrees. Plaintiff has proffered that irrespective of her license, her job title is "Security Officer." The Court will allow plaintiff to use her job title. Plaintiff is subject to cross examination on this issue.

Accordingly, defendant's MIL # 10 is DENIED.

III.   CONCLUSION

Plaintiff's Motion No. 1 is DENIED.

Plaintiff's Motion No. 2 is DENIED.

Plaintiff's Motion No. 3 is DENIED.

Plaintiff's Motion No. 4 is DENIED.

19

Plaintiff's Motion No. 5 is GRANTED as unopposed.

Plaintiff's Motion No. 6 is HELD IN ABEYANCE.

Defendant's Motion No. 1 is GRANTED

Defendant's Motion No. 2 is GRANTED.

Defendant's Motion No. 3 is GRANTED.

Defendant's Motion No. 4 is DENIED.

Defendant's Motion No. 5 is HELD IN ABEYANCE.

Defendant's Motion No. 6 is DENIED.

Defendant's Motion No. 7 is DENIED as moot.

Defendant's Motion No. 8 is GRANTED as unopposed.

Defendant's Motion No. 9 is DENIED.

Defendant's Motion No. 10 is DENIED.

A hearing on spoliation shall be held prior to trial. Counsel shall confer and communicate with Chambers regarding an appropriate time.

The Clerk of Court is directed to terminate the in limine motions at ECF Nos. 81 and 83.

SO ORDERED.

Dated:   New York, New York
         October 9, 2015

                                    _____
                                        KATHERINE B. FORREST
                                        United States District Judge